**EXHIBIT A**
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN DeWITT, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>ROCKFORD RESCUE MISSION )<br>MINISTRIES, an Illinois not-for-profit )<br>corporation doing business as Rockford )<br>Rescue Mission, )<br>)<br>Defendant. ) | Case No. 19-50142<br><br>**FILED**<br>JUN 17 2019<br>THOMAS G. BRUTON<br>CLERK, U.S. DISTRICT COURT |

## COMPLAINT

Plaintiff, Benjamin DeWitt states as follows for his Complaint against Defendant, Rockford Rescue Mission Ministries:

### JURISDICTION AND VENUE

1. The Northern District has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and all federal claims subject to 28 U.S.C. § 1331.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) as a substantial part of the events which are alleged herein occurred in Winnebago County, Illinois.

3. Venue of this action has been properly laid in the Northern District of Illinois, Western Division, as all parties to this complaint are citizens of the State of Illinois, and reside or have its principal place of business in the Northern District of Illinois.

### PARTIES

4. Plaintiff at all times relevant was an employee of Defendant and a resident of Winnebago County, Illinois.

5. Defendant is a domestic not-for-profit corporation incorporated under the laws of the State of Illinois.

## COUNT I

## Violation of the Fair Labor Standards Act – Overtime Wages

6. This matter arises from the Defendant's violation of the Fair Labor Standards Act, hereinafter referred to as the FLSA, 29 U.S.C. § 201, for its failure to pay overtime wages to Plaintiff for all hours worked.

7. The Defendant is an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 et.seq.

8. The Defendant was engaged in commerce.

9. At all relevant times herein, Plaintiff was employed by Defendant as an "employee" subject to the FLSA. Plaintiff performed a variety of job duties and responsibilities for Defendant within this Judicial District. During the course of his employment by Defendant, Plaintiff was not exempt from the overtime wage provisions of the FLSA, 29 U.S.C. § 207.

10. Plaintiff worked in excess of forty hours per week.

11. Pursuant to 29 U.S.C. § 207, for all weeks during which the Plaintiff worked in excess of forty hours, he was entitled to be compensated at a rate of one and one-half times his rate of pay for hours worked in excess of forty hours in individual weeks.

12. During the months of June 2017 to March 2019, Plaintiff worked 941.55 hours of overtime.

13. Defendant did not compensate Plaintiff at a rate of one and one-half times his rate of pay for all overtime hours worked.

Wherefore, Plaintiff, Benjamin DeWitt, respectfully requests that this Court enter the Stipulated Judgment attached hereto as Exhibit 1 in his favor and against Rockford Rescue Mission Ministries, an Illinois not-for-profit corporation doing business as Rockford Rescue Mission, providing for a judgment in the amount of the overtime premium for all hours in which Plaintiff worked in excess of 40 hours per week and liquidated damages in an amount equal to the amount of unpaid overtime compensation found due.

Dated: 06/04/19					BENJAMIN DeWITT, Plaintiff

						_Benjamin N. DeWitt_

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BENJAMIN DeWITT, ) <br> ) <br>         Plaintiff, ) <br> vs. ) <br> ) <br> ROCKFORD RESCUE MISSION ) <br> MINISTRIES, an Illinois not-for-profit ) <br> corporation doing business as Rockford ) <br> Rescue Mission, ) <br> ) <br>         Defendant. ) | Case No. _____ |

## STIPULATED JUDGMENT AND
## CONSENT TO ENTRY OF ORDER BY MAGISTRATE

    The undersigned parties hereby stipulate to the entry of a judgment in favor of Plaintiff Benjamin DeWitt and against Defendant Rockford Rescue Mission Ministries, an Illinois not-for-profit corporation doing business as Rockford Rescue Mission, in the amount of Twelve Thousand Five Hundred Sixteen and 84/100 Dollars ($12,516.84) representing Six Thousand Two Hundred Fifty-Eight and 42/100 Dollars ($6,258.42) in unpaid wages and Six Thousand Two Hundred Fifty-Eight and 42/100 Dollars ($6,258.42) in penalties with all parties to bear their own costs. Rockford Rescue Mission Ministries denies liability in this matter and consents to entry of the Stipulated Judgment solely in order to avoid transactional costs and the uncertainty of litigation.

    The parties have consented to the entry by any Magistrate Judge sitting in the Northern District of Illinois of this Judgment.

06/04/19
Date

_[signature]_
Benjamin DeWitt

6-5-19
Date

ROCKFORD RESCUE MISSION MINISTRIES

BY:  HOLMSTROM & KENNEDY, P.C.
       Its Attorneys,

BY: _[signature]_ Alexander J. Mezny

4823-7401-3079, v. 1

**EXHIBIT 1**

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is dated May 22, 2019 for reference purposes and is made by and between **Benjamin DeWitt** (referred to in this Agreement as "Employee"), and **Rockford Rescue Mission Ministries**, an Illinois not-for-profit corporation doing business as Rockford Rescue Mission (referred to as the "Company").

Employee was employed by the Company from June 12, 2017 until April 19, 2019. Employee raised concerns that he was not an exempt employee. Employee has provided the Company with a detailed spreadsheet showing what he believes to be an accurate total of hours he worked each day. Using that information, Employee and Company have calculated and agree that the maximum amount of overtime and penalties to which Employee could be entitled is $12,516.84.

Employee and the Company desire to amicably and finally resolve all matters in dispute between them. Therefore, in consideration of the mutual promises and covenants set forth in this Agreement, the receipt and sufficiency of which are acknowledged by the parties, Employee and the Company agree that the recitals set forth above are a material part of this Agreement, and further agree as follows:

1. **Payments to be Made**. Within five (5) business days of the Court approval of this fully executed Settlement Agreement and Release and entry of the Stipulated Judgment attached as Exhibit B, the Company will pay and cause to be delivered to Employee, the gross amount of Twelve Thousand Five Hundred Sixteen and 84/100 Dollars ($12,516.84) as follows:

    a) Six Thousand Two Hundred Fifty-Eight and 42/100 Dollars ($6,258.42), less all required withholdings for state and federal taxes. The amount paid to Employee under this paragraph shall be reported as income to Employee on a form W-2.

    b) Six Thousand Two Hundred Fifty-Eight and 42/100 Dollars ($6,258.42) without withholding as this amount represents a penalty and not earned wages. The amount paid to Employee under this paragraph shall be reported as income to Employee on a form 1099.

2. **No Admission of Liability**. It is expressly acknowledged by Employee that the entry into this Agreement by the Company, and the payment and promises provided for in this Agreement, represent the compromise of disputed claims and shall not be construed as an admission by the Company (or any of the other Released Parties described in paragraph 3 below) of any liability, culpability or responsibility, and that they expressly deny any such liability, culpability or responsibility. The parties have entered into this Agreement in good faith for the sole purpose of resolving the aforementioned claims and complaints to avoid the burden, expense, delay and uncertainties of litigation.

3. **Release By Employee**. Employee irrevocably and unconditionally releases and forever discharges the Company, its affiliates and employee benefit plans and each of their owners, subsidiaries, directors, officers, employees, trustees, fiduciaries, administrators and other agents or

representatives, and their predecessors, successors, heirs, executors, administrators, and assigns, and all persons acting by, through, or in concert with any of them (collectively referred to in this Agreement as the "**Released Parties**"), of and from any and all claims (including but not limited to damages, expenses, attorney's fees and costs), of any nature whatsoever, in law or equity, which he ever had or now has, or any claims which Employee or Employee's heirs, executors or administrators may have in the future involving any matters which were or could have been raised in the Complaint, and any claims against the Released Parties involving any other matters occurring prior to the date this Agreement is signed by Employee or involving any continuing effects of actions or practices which arose prior to the date this Agreement is signed by Employee. This release includes but is not limited to any claims arising from or related to:

- The Company's personnel policies or practices;
- Any alleged breach of contract;
- Any allegations regarding pay, benefits or any other employment rights;
- Wrongful termination, retaliatory discharge, whistleblowing, breach of fiduciary duty, intentional infliction of emotional distress, defamation, or any allegedly tortious conduct;
- Any allegations of unlawful harassment, discrimination or retaliation;
- The Age Discrimination in Employment Act;
- The Americans with Disabilities Act;
- The Civil Rights Act of 1964, including Title VII of that Act;
- The Civil Rights Act of 1991;
- The Employee Retirement Income Security Act including COBRA;
- The Health Insurance Portability and Accountability Act ("HIPAA");
- The Fair Labor Standards Act;
- The Family and Medical Leave Act;
- The Genetic Information Nondisclosure Act;
- The National Labor Relations Act;
- The Worker Adjustment Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Federal Rehabilitation Act;
- The Illinois Human Rights Act;
- The Illinois Wage Payment & Collection Act (Employee acknowledges that he was paid any vacation pay he was owed when he separated from employment);
- The Illinois Minimum Wage Act
- The Illinois Constitution;
- Any claims for or rights to receive personal relief in connection with a grievance or claim; and/or,
- Any other local, state, or federal law, order, regulation, or ordinance.

This release does not apply to or affect Employee's right to pursue a claim for unemployment benefits. This release shall not apply to any claims which arise after the date on which this Agreement is signed by Employee.

Settlement Agreement and Release
Page **2 of 4**

4. **Filing of Complaint and Entry of Stipulated Judgment**. Employee agrees to file the Complaint attached as Exhibit A consenting to the entry by any Magistrate Judge in the Northern District of Illinois of the Stipulated Judgment attached to this Agreement as Exhibit B. The Parties agree that this Settlement Agreement & Release is contingent upon filing of the Complaint and entry of the Stipulated Judgment and that if the Stipulated Judgment is not entered, that this Settlement Agreement & Release is null and void.

5. **Communications to Others**. Employee will not make, directly or indirectly, any derogatory or defamatory statements about the Company or its affiliated entities, officers, directors, employees or agents to any other person or business entity.

6. **Severance of Employment**. Employee agrees and recognizes that his employment relationship with the Company, its parents, affiliates and successors (collectively the "Company") has been permanently and irrevocably severed, that Employee will not apply for or otherwise seek re-employment with the Company at any time, and that the Company has no obligation, contractual or otherwise, to rehire, re-employ, recall or hire him in the future.

7. **Confidentiality of Agreement**.

(a) Employee shall keep the terms and conditions of this Agreement completely confidential. Employee hereby represents that before signing this Agreement, he did not disclose: (a) the terms of this Agreement, (b) the payments this Agreement reflects or any prior offers; or (c) the fact that a settlement was demanded, offered, or reached (collectively referred to as the "Confidential Terms") to any person, including other employees of the Company and excluding only Employee's accountants, tax advisors, attorneys or immediate family. Employee shall not disclose the Confidential Terms to any third parties. Employee may disclose the Confidential Terms to his immediate family, accountants, tax advisors, and attorneys; provided, however, that Employee must advise such individuals that they must not re-disclose the information to any party to whom disclosure is not authorized by this Agreement. Employee may also disclose the terms of this Agreement when required to do so by law.

(b) If an unauthorized disclosure of any of the Confidential Terms is made by Employee or by any person to whom Employee has disclosed the Confidential Terms, Employee must pay the Company liquidated damages in the sum of Five Thousand Dollars ($5,000.00) for each unauthorized disclosure. The parties agree that that amount of liquidated damages reasonably reflects the damage the Company may suffer in the event of an unauthorized disclosure and further agree that, in the event of a breach, actual damages would be uncertain in amount and difficult to prove. The Company agrees that Employee's liability for the liquidated damages described above requires a showing that either: (1) if the unauthorized disclosure is made by Employee, he knew or should have known at the time of the disclosure that it would violate this paragraph, or (2) if an unauthorized disclosure is made by a person to whom Employee has made a disclosure, that Employee either failed to notify that person that he or she could not re-disclose the information or that Employee directed the person to make an unauthorized disclosure.

8. **Assignment & Effect**. This Agreement shall inure to the benefit of and be binding on the parties and their respective successors and assigns. This Agreement may not be assigned by Employee.

9. **Voluntary Release and Agreement**. Employee represents and certifies that he has carefully read and fully understand all of the provisions and effects of this Agreement, and had the opportunity to fully discuss the terms and effect of this Agreement with an attorney. Employee further represents and certifies that he is voluntarily entering into this Agreement and that neither the Company nor any of its agents, representatives or attorneys have made any representations regarding the terms and effect of this Agreement other than those contained in this Agreement.

10. **Governing Law; Severability**. This Agreement shall be interpreted, enforced, and governed under the laws of the State of Illinois. The language of all parts of this Agreement shall be construed as a whole, according to its fair meaning. Should any portion of this Agreement be determined by a court of competent jurisdiction to be unenforceable, such determination shall not affect the enforceability of any remaining parts of this Agreement, which shall remain in full force and effect. If, however, the release contained in this Agreement is declared or determined to be unenforceable or invalid upon the application of Employee, then she shall be required to reimburse the Company for all payments made under the terms of paragraph 1.

11. **Entire Agreement**. This Agreement sets forth the entire agreement between the parties and fully supersedes any and all prior agreements, negotiations or understandings between the parties pertaining to the subject matter of this Agreement.

12. **Execution in Multiple Counterparts and by Facsimile**. This Agreement may be executed using counterparts and shall be fully effective and enforceable upon exchange of such executed counterparts by mail or by facsimile transmittal. Immediately following any exchange of executed counterparts by facsimile transmittal, the parties shall transmit signed original counterparts to each other, but the failure of either party to comply with this requirement shall not render this Agreement void or otherwise unenforceable.

To evidence their agreement, the parties have executed this Agreement on the date set opposite to their signatures below.

06/04/19
Date

_____
Employee

6-5-19
Date

The Company,

BY: _____
Alexander J. Mezny,
Its Duly Authorized Agent

Settlement Agreement and Release
Page 4 of 4